on behalf of Appellant Dennis Graves. Also with me at council table is Brenda Wexler. Are you going to use all the argument time? I'm going to reserve two minutes for rebuttal or try to. But you're not sharing argument time with her. No, I'm not. Okay. Proceed. Your Honors, in closing statements, a prosecutor is permitted to criticize the defense theory. It may not do so, however, in the context of providing the jury with a legally inaccurate standard of reasonable doubt. In this case, I think really the context in which the reasonable doubt instruction arose is key. For about two and a half pages preceding the instruction, the prosecutor went through a list of seven things that the jury would have to believe in order to acquit Mr. Graves. Well, let's start first. The jury was correctly instructed with the reasonable doubt instruction, correct? When the judge read instructions prior to closing statements, yes, they were given the correct Ninth Circuit instruction. And the judge tells the jury that what the lawyers say is not evidence, correct? They did, Your Honor, yes. However, the ---- And the prosecutor told the jury several times that the prosecution had the burden of proving guilt beyond a reasonable doubt. Yes, they did, sir. But what happened, what makes this case particularly interesting is that in the record, if you look at pages 3 and 4, immediately the prosecutor says, yes, the standard is reasonable doubt, but we are here every day. And by saying that, the prosecutor minimized the burden that they had to meet. Essentially, what he's saying to the jury, sure, it's reasonable doubt, but it's easy for us because we do this all the time. And then when he went into a description of reasonable doubt, he provided a description that was just legally inaccurate. It's in the briefs at 3 to 4. It's in the record at 3 to 4. He went into an extended analogy comparing reasonable doubt to a bucket of water story. And in essence, what the analogy was trying to convey to the jury is that in order to convict the defendant, in order to acquit the defendant, the defendant has the standard here. And that's what the prosecutor did. And that simply is not the standard here. Well, now, if that's really what you're arguing, how are you going to differentiate your case from the United States v. Tucker? Your Honor, this is the case. As United States v. Tucker, the prosecutor said in closing argument the defense's case was not reasonable. That's what they said. Yes. Which is the same argument you're making here. As to that, as to what the prosecutor did is he said that either the defendant had to come up with some proof or to say that the case was not reasonable was wrong. And what did we say in Tucker? Though inartful, his meaning is evident from the context. Your Honor, I would assert that this is Tucker plus. And I agree that the facts at the beginning at least are very similar. The prosecutor in Tucker went through a list of things the jury would have had to have found in order to acquit the defendant there. The same thing happened here. However, what makes this different from Tucker is, first, you get the prosecutor minimizing the reasonable doubt standard by saying to the jury, we're here every day. This is an easy standard for us to traverse. And then moves into a description of reasonable doubt that sounds a lot more like circumstantial evidence than it does like reasonable doubt. He said, all you have to do, what's more believable? What's more reasonable? And here the government is telling a more reasonable story. So that's what he said. I guess, what do you think I'm looking at when I look at the context? Am I only looking at the context of what the prosecutor said? Or am I looking at the context of what happened at trial and what the prosecutor said? It's both, Your Honor. So if it's both, and the prosecutor correctly states the government's burden, and the defense counsel correctly states the burden, and the trial court properly instructs the jury on the burden, and the only thing out of context are these statements, which are somewhat similar to Tucker, why is my, what can I do for you? Your Honor, I'd like you to remand this case. Well, I know what you'd like, but based on these facts, what can I do? Based on these facts. In context. The context is that it is what happens is the prosecutor, as I said before, goes through a complete criticism of the defense theory. There's no intervening discussion about the evidence that they've proven. And in the end, even though the judge did say, well, I've instructed that this is argument and not evidence. I don't think that was, I do not think that that instruction cured what the prosecutor said. When the jury walked into the deliberation room, what they were left thinking is, in order to acquit the defendant, all we have to do, he, the defendant, has to tell us a more reasonable story. Indeed, it's not the defendant's burden to prove anything. Well, I'm not sure that that's what I can say in context. I mean, one person may have said that or may have been inartful in what they said. But in context, they were told at least four times what the burden was and who had it. So in context, based on something that counsel might say getting all carried away in his argument, which I may have done. I mean, I remember making a lot of arguments to the jury. And you get excited and you say things maybe you don't. But in context now. Well, Your Honor, I. Well, I mean, it was just sort of saying that the defendant's story was ridiculous. Because the defendant was caught in a car that was pursued with a wig with $1,800 worth of money after allegedly, you know, the whole, the chase, the, you know, yes, he got out of sight for, you know, so all of that. And so if the prosecutor had gotten up and said, that's just a ridiculous story, we wouldn't be here, right? Actually, we would be here. I think that kind of criticism on defense theory would be improper vouching. However, the question really here is, it's not. You can't. A prosecutor cannot say that's a ridiculous story. That you. I would look for the panel that would reverse on that. You know, and I guess I argued enough cases, too. I think that we all did. That we even question whether the jury listens to people sometimes. I mean, in terms of, so it's pushing a rock uphill. I mean, if you got up there and said, oh, yeah, that was a really good story, that, what sort of prosecutor would that be? And or even, this is a really close case. I always drive with $1,800 and a wig in my car really fast when the police chase me. Your Honor, the burden isn't on the defense, really, to tell a plausible story. Well, it isn't. But once the defendant opens his mouth, the prosecutor can comment on the ridiculousness of the story. Certainly, he can comment on the ridiculousness of the story, but he can't also use that to comment on the reasonable doubt standard and say, all we have to do is just tell you a more reasonable story than the defense did. Indeed, the jury could have found Mr. Graves not guilty on some fact that the government did not prove entirely independent of the defense theory presented by Mr. Graves. Well, you're getting down to your rebuttal time. Unless you have any more questions, I'll just reserve the remainder. Just wait. All right. And I might ask you a question on the sentence when you come back. Good morning. Good morning. Peter Levitt for the United States, Your Honor. As Judge Smith correctly pointed out, this Court held in Tucker that to believe the defendant's account, the jury would have to believe certain implausible aspects of his testimony. That this sort of argumentation is permissible, and that's what this case turns on. The government never weakened, watered down, or minimized any aspect of the reasonable doubt standard which, as has been correctly observed, was assigned to us and which we recognized at least twice, both in open and closing and in rebuttal. The district court correctly charged the jury that the government bore the burden to prove beyond a reasonable doubt on each element of the charged offense, and that the difference between reasonable doubt and all possible doubt was that reasonable doubt was based on reason and common sense, not purely on speculation. And that, as Judge Callahan pointed out, is precisely what was the purpose that underlay the wet raincoat analogy. Let me talk to you about another case, because I think these cases, this case falls between these two cases. United States v. Cegna. In United States v. Cegna, the prosecutor, we found the prosecutor shifted the burden inappropriately in closing statement by saying defense counsel must overcome his competent evidence, and we found this to be a reversal of the burden constituting plain error, and we reversed. This seems to get really close to that. Your Honor, I might respectfully disagree with your characterization that it gets really close, because I don't think it does. Why? Because in this case, the prosecutor never at any point said the defendant had to do anything. The wet raincoat analogy merely highlighted the distinction given in the jury instructions between reasonable doubt and all possible doubt. Just as it's possible to believe a man in a wet raincoat walking into court was hit by a bucket of water and not rained upon, it's possible, but not reasonable, to believe that during four minutes that the officer took to get here, the real bank robber jumps out of a Chevy Avalanche, runs away, disappears into a neighborhood, and then the homeless and hapless Mr. Graves happens into the abandoned cash-and-wig-laden vehicle and starts driving it around. That's a difference between this and Cigna. This merely highlighted the distinction between reasonable and all possible. If I were to suggest that my colleagues and I would get back there and say, you know, in context, these statements were inappropriate, what's your best case to say that this error was cured? Your Honor, I — a specific citation alludes me right now, but I would note that in this case, and was forced to do so. The judge didn't offer any curative instruction, did he? No, the judge didn't. So then how do I find it was cured? Well, if we take the appellant at his word and believe that anything in this innocuous analogy weakened the reasonable doubt standard, it was cured by the fact that the district court correctly charged as pursuant to this Court's model of instruction. Well, that's not exactly a curative instruction. No, Your Honor, because I would submit there was no error here. There was no error. So, well, do you have — does there have to be no error for you to prevail, I think, is what he's asking you. If there is — if the panel were to conclude there's error, since there was not a curative instruction, you're sort of arguing a harmless error. Yes, Your Honor. And I think that's what the appellant is saying, that you can't argue. Well, Your Honor, if we were getting to the point that this were an error, we'd have to look at the fact that this defendant made a full, free confession to each and every aspect of this offense. He said, I went into the van — Okay. So that's looking at the strength of the case. So that — so it's really a harmless error analysis. It's really the strength of the evidence. And can you make — if, you know, if there is an — if it's error and there's nothing — and there's not a curative instruction, can you make a harmless error argument? Yes, Your Honor. Assuming — My case would say, without a curative instruction, I can go to a harmless error analysis. I do not have a — Well, I don't think there is a case, so I was trying to get you to help me out. I think your real argument, as my colleague has suggested and my question was trying to lead you to, I've got to find, in this particular case, that the context of the whatever problem there was, if a problem. Otherwise, no curative instruction and I've got to do what the defendant asks. I believe Your Honor's assessment is accurate. I believe that in the context of this closing argument, the — what — again, I don't believe there was any harm. But if there was, the context of it, just like the context in Tucker, made plain that the government was not shifting anything, minimizing or watering down any applicable standard. I have one other question, which has been curious to me, and it may be just because I'm who I am. You kind of suggest that this is an abuse of discretion standard, that I am to suggest that I give the district court its head in determining whether the prosecutor did what they had to do. Yet there are other cases who seem to suggest this is a de novo standard. Does it matter to you which standard I use in this particular matter? No, Your Honor. I believe that the abuse of discretion standard does apply, and I believe that the That's not — that's not the question. That's not the question. Would there be a different result if the standard of review was abuse of discretion or de novo? No, Your Honor. Because there's obviously a split in the cases on this. No, Your Honor. I would suggest that the government — So under a de novo — Under de novo — Even under de novo, you still win. Is — Under a de novo, not — You have to listen to the question and answer it. Yes. You're correct, Your Honor. Under a de novo, non-deferential standard, the government would still prevail. I would, however, having said that, note that in the Navarro case, this Court did write that the trial judge's broad discretion in controlling closing argument and improprieties in arguments to the jury do not constitute reversible error unless it's so gross as to probably prejudice the defendant and the prejudice has not been neutralized by the trial judge. If there are — Was a curative instruction requested here? No, Your Honor. The defendant merely objected that the province of the jury — it's the province of this Court to give the instruction with respect to reasonable doubt and not to provide any examples for either party, excerpts of Record 362. That was the solitary extent of the objection. I — Sounds good. Thank you, Your Honor. I think it's very intellectual, the way that the objection was. I never found trial counsel to be quite so well-spoken. All right. Did you want to say anything about the sentencing issue? The district court's within guidelines, indeed, low-end sentence was reasonable. The district court was plainly well aware that it could confer a downward variance on behalf of this defendant, but decided, based on the totality of the evidence viewed through the prism of the factors set forth in 3553A, that it would not do so, that it would give him a low-end sentence, would apply the career offender guideline, the characterization of which was not objected to in the district court, and that a low-end sentence best served those statutory sentencing factors. We therefore ask that the judgment and sentence be affirmed. All right. Thank you. I have a question on the sentencing part of it. Your argument as to the application of the career offender guideline seems to be that the guidelines are generally too severe and not based on a proper foundation or empirical evidence. If we reject that argument, is there any reason that the career offender guideline should not be applied in this case? No, Your Honor, because both of the offenses qualify for the career offender guideline. So the thrust of the argument is that is correct, Your Honor. Okay. Just a couple of quick points on rebuttal, Your Honor. First, the prosecutor – in addition to objecting immediately during closing argument to the prosecutor's mischaracterization of reasonable doubt, the defense attorney in this case also moved for mistrial at a sidebar. So I'd say that the issue is preserved for the most stringent standard of review, whatever standard you decide to apply to this case. The other point that I would like to make is that the – Well, do you think the result's different if it's abusive discretion? Say again, Your Honor. If the standard of review is abusive discretion, which is obviously a more favorable standard to the prosecutors, do you lose or do you – he says he wins under either standard. Are you going to tell me you win under either standard or does it need to be de novo? Of course I am, Your Honor. I – really, in the end, it doesn't matter whether it's de novo or abusive discretion, because what the Supreme Court said in Kuhn was that even when you're reviewing for abusive discretion, you still have to look at the facts and law de novo. There isn't a de novo aspect. So when Your Honors are back deliberating on this case, you do still have to look very closely. And I think we prevail under either standard. The prosecutor stated that – What is an abuse of discretion? Say again, Your Honor. What is an abuse of discretion? In this case, Your Honor, it was the failure of the court to recognize and cure the error made by the prosecutor. Is that a law problem? That is – If it's simply a problem the judge can make on a discretionary basis, then what he did has to be implausible. Certainly the judge has a lot of discretion in these cases. However, we're talking about – Implausible. That's what I'm suggesting. Is what he did implausible? No, it's not implausible, Your Honor. Then it isn't an abuse of discretion under our statute, under our case law. Your Honor, I would respectfully assert that it is an abuse of discretion, because we're not talking about any kind of legal standard here. We're talking about the bedrock legal standard in a criminal case, that the defendant the government bears the burden of proving that the defendant is guilty beyond a reasonable doubt. And I'm over time, so if there's no further questions. All right. Thank you both for your argument. This matter will stand submitted.
judges: Alarcon, Callahan, Smith